UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNIVERSAL MUSLIM ASSOCIATION OF AMERICA; JOHN DOE; and JANE DOE,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOMS AND BORDER PROTECTION; U.S. DEPARTMENT OF STATE; U.S. DEPARTMENT OF JUSTICE; JOHN KELLY, in his official capacity as Secretary of the Department of Homeland Security; KEVIN K. MCALEENAN, in his official capacity as Acting Commissioner of U.S. Customs and Border Protection; REX W. TILLERSON, in his official capacity as Secretary of State; and JEFFERSON BEAUREGARD SESSIONS III, in his official capacity as Attorney General of the United States,<br><br>　　　　　Defendants. | Civil Action No.: 1:17-cv-00537-TSC |

**SUPPLEMENTAL DECLARATION OF THE UNIVERSAL MUSLIM ASSOCIATION OF AMERICA, INC. IN SUPPORT OF THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

　　　　Pursuant to Title 28 U.S.C. Section 1746, I, Azmat Husain, hereby declare and state as follows:

　　　　1.　　I am over the age of eighteen years.  I have personal knowledge of the facts set forth herein or believe them to be true based on my experience or upon personal information provided to me by others, and am competent to testify thereto.

2. I am the Program Director of the Universal Muslim Association of America, Inc. ("UMAA"). I previously submitted a declaration in support of Plaintiff's motion for preliminary injunction, which was filed with this Court on March 24, 2017. This document supplements that initial declaration.

**Impact of the President's Executive Order on UMAA's 2017 National Convention**

3. UMAA's national convention is scheduled for June 30 - July 3, 2017.

4. UMAA has invited a number of Iranian and Iraqi speakers to participate in its 2017 annual conference, including a 39-year old Iraqi male clergy, a 51-year old Iranian male reciter, and a 40-year old Iraqi male clergy.

5. Each of these speakers has applied for travel documents that would allow them to travel to and enter the United States for purposes of attending UMAA's national convention. The two Iraqi clergy recently received their travel documents, but the process of receiving those documents took substantially longer than it has taken in the past. The Iranian male reciter still has not received his travel documents.

6. In light of Executive Order 13780, UMAA has had to consider alternate clergy who do not reside in Shi'a Islam's largest seminaries and less well recognized religious reciters as part of its speaker line up for the 2017 annual convention. UMAA has built its reputation on having the most popular, well-known, and highly respected speakers in the worldwide Shi'a Muslim community speak and/or recite at the UMAA convention, and this year we will be unable to obtain several of these speakers because of the Executive Order. As a result, UMAA has had a more difficult time getting a number of speakers for the upcoming 2017 annual convention.

7. The majority of UMAA ticket sales occur within the last 60 days leading up to the convention, with more than half of those sales taking place during the last week leading up to the convention. UMAA expects that there will be a reduced turnout this year due to not only the change in speaker lineup, but also the fact that many convention attendees are Muslims who travel to the United States from outside the country just for the convention, and who will be unable to obtain travel documents because of the Executive Order.  While UMAA is unable to precisely predict how many attendees will be affected by the Executive Order until shortly before the convention, UMAA is experiencing great difficulty in preparing for the logistics of the 2017 annual convention and in forecasting its budget in relation to the convention.

**Impact of the President's Executive Order On Individual UMAA Members**

8. As stated in my previous declaration, UMAA is the largest organization of Shi'a Muslims in the United States, and our membership is comprised of Shi'a Muslims living all across the United States.

9. UMAA has numerous members who have been directly and negatively impacted by Executive Order 13780.  Our members have been impacted in a number of ways.

10. I am personally aware of at least one UMAA member—indeed, I am personally aware of many—who seek religious and moral guidance from the foreign scholars that UMAA frequently arranges to attend and speak at events in the United States throughout the year.  As a result, these UMAA members and others like them are currently unable to meet with these scholars unless they leave the United States.  The inability to meet with and consult with these scholars significantly impairs the religious and moral development for these UMAA members.

11. I am personally aware of at least one UMAA member—indeed, I am personally aware of many—who are United States citizens or nationals but have family living abroad in Iran

or Iraq. These UMAA members and others like them either have pending petitions or are planning to petition their family members to obtain visas for travel to the United States. If an appellate court were to lift the injunction currently in place, these individuals would be prevented from being able to bring their family members to visit or live in the United States. For these UMAA members, the separation from their families would either be prolonged or prevented because such family members would be required to prove that they are in the United States' national interest to obtain such waivers.

12. I am personally aware of at least one UMAA member—indeed, I am personally aware of many—who are nationals of Iran or Iraq but currently live in the United States on single-entry visas. If an appellate court were to lift the injunction currently in place, these UMAA members and others like them will be unable to travel to Iran to visit family members because they will be unable to return to the United States.

13. I am personally aware of at least one UMAA member—indeed, I am personally aware of many—who feel that Executive Order 13780 (and its predecessor, Executive Order 13769) have branded them with unfavorable stigma based on their religious beliefs as Shi'a Muslims. These UMAA members and others like them fear that they will be targets of hate, fear, and even violence in their communities, based on their religious beliefs and national origin. Moreover, I am personally aware of at least one UMAA member of Iranian national origin who feels that the visa waiver provision requiring Iranians to prove that their entry into the United States is in the national interest is particularly stigmatizing, because it tells the Iranian-American community that some Iranians are not in the United States' national interest and that the United States does not want Iranians in the United States.

14. Due to fear of harassment or other negative attention, the UMAA members who have suffered these negative impacts because of Executive Order 13780 wish to remain anonymous. The members described above include the following individuals: (i) a 24-year- old male film producer who resides in Dearborn, Michigan; (ii) a 24-year-old male IT support professional who resides in Dearborn, Michigan; and (iii) a 23-year-old female law student who resides in Dearborn, Michigan.

This statement is true and correct to the best of my knowledge. I am aware of the penalties under Title 18, United States Code, Section 1001, for knowingly making false statements in these proceedings.

4/16/2017
(date)

_____
(signature)