**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNIVERSAL MUSLIM ASSOCIATION OF AMERICA, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>DONALD J. TRUMP, *et al*.,<br><br>*Defendants*. | No. 17-cv-537 (TSC)<br><br>Electronically Filed<br><br>Hon. Tanya S. Chutkan |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' EMERGENCY MOTION**
**TO STAY PROCEEDINGS PENDING SUPREME COURT REVIEW**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 1

ARGUMENT ..... 3

I. Defendants' Petition for Certiorari Does Not Warrant a Stay. ..... 3

A. It Is Unlikely That Defendants Will Prevail Before the Supreme Court. ..... 5

B. A Supreme Court Decision Will Not Resolve All Legal Issues In This Case. ..... 5

II. Defendants Cannot Meet Their Burden To Demonstrate a Stay Is Necessary. ..... 8

CONCLUSION ..... 11

## TABLE OF AUTHORITIES

**Page(s)**

CASES:

*Abdah v. Bush*,
No. Civ. A. 04-1254, 2005 WL 711814 (D.D.C. Mar. 29, 2005)....10

*Aziz v. Trump*,
No. 17-cv-116, 2017 WL 580855 (E.D. Va. Feb. 13, 2017)....5

*Free Speech v. FEC*,
720 F. 3d 788 (10th Cir. 2013),
*cert. denied*, 134 S. Ct. 2288 (2014)....7

*Hawai'i v. Trump*,
No. 17-cv-0050, 2017 WL 1011673 (D. Haw. Mar. 15, 2017)....5

*Holland v. ACL Transp. Servs, LLC*,
815 F. Supp. 2d 46 (D.D.C. 2011)....8, 9

*IRAP v. Trump*,
2017 WL 2273306 (4th Cir. 2017),
*aff'g* No. 17-cv-361, 2017 WL 1018235 (D. Md. Mar. 16, 2017).... *passim*

*Kleindienst v. Mandel*,
408 U.S. 753 (1972)....6

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)....3, 4, 8

*Nken v. Holder*,
556 U.S. 418 (2009)....4

Petition for Writ of Certiorari,
*IRAP v. Trump*,
2017 WL 2273306 (filed June 1, 2017).... *passim*

*Simms v. District of Columbia*,
872 F. Supp. 2d 90 (D.D.C. 2012)....10

*Sonnier v. Crain*,
649 F. Supp. 2d 484 (E.D. La. 2009)....4

*Via Christi Reg'l Med. Ctr., Inc. v. Sebelius*,
Civ. A. No. 09-02060 (CKK), 2011 WL 13161451 (D.D.C. Oct. 28, 2011)....4

*Washington v. Trump*,
847 F.3d 1151 (9th Cir. 2017)....5

**<u>OTHER AUTHORITIES</u>**:

Adam Liptak and Peter Baker, *Trump Promotes Original 'Travel Ban,' Eroding His Legal Case*, NEW YORK TIMES, June 5, 2017 .......... 2

Donald J. Trump, Twitter (@RealDonaldTrump), https://twitter.com/realDonaldTrump/status/871674214356484096 .......... 2

Donald J. Trump, Twitter (@RealDonaldTrump), https://twitter.com/realDonaldTrump/status/871899511525961728 .......... 3

Donald J. Trump, Twitter (@RealDonaldTrump), https://twitter.com/realDonaldTrump/status/871677472202477568 .......... 3

Donald J. Trump, Twitter (@RealDonaldTrump), https://twitter.com/realDonaldTrump/status/871679061847879682 .......... 3

Donald J. Trump, Twitter (@RealDonaldTrump), https://twitter.com/realDonaldTrump/status/871675245043888128 .......... 3

Protecting The Nation From Foreign Terrorist Entry Into The United States, 82 Fed. Reg. 13209 (Mar. 6, 2017) .......... 2

Veronica Stracqualursi and Adam Kelsey, *Consider Trump's tweets to be 'official statements,' says Spicer*, ABC News, June 6, 2017, http://abcnews.go.com/Politics/trumps-tweets-official-statements-spicer/story?id=47871334 .......... 3

16 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3921.2 (3d ed. 2017) .......... 7

## **INTRODUCTION**

Defendants filed an "emergency" motion to stay this case, which has reached only the preliminary-injunction-hearing stage, on the ground that they have filed a petition for certiorari in a different case—*IRAP v. Trump*—that is itself only at the preliminary-injunction stage. While *IRAP* and this case involve some overlapping legal considerations, the government has not met its burden to demonstrate that the Supreme Court will actually decide to grant review and reach those issues, or that its disposition of the legal issues presented in the cert. petition would fully resolve even *IRAP* itself, much less this separate case. And indeed, that is not so: Both cases would still have to be litigated on the merits to resolve the various plaintiffs' claims for permanent injunctions. In addition, the preliminary injunction at issue in *IRAP v. Trump* is narrow, and Supreme Court review of that injunction would not even address, let alone resolve, many of the issues presented in this case. Hence, the government has not shown that the interests of the parties and of judicial economy warrant stopping this case in its tracks before the government has even responded to the amended complaint. Indeed, the record that will ultimately determine UMAA's right to a preliminary injunction is fluid and developing. Just this week, the President's tweets confirmed that the Executive Order is the ban UMAA has always said it was, despite previous denials. UMAA should not be delayed in building its case.

## **BACKGROUND**

On May 11, 2017, this Court entered an order temporarily staying review of the pending motion for a preliminary injunction and setting a briefing schedule for Defendants' response to UMAA's Complaint. Defendants subsequently sought an extension of their response deadline from May 26 to June 9, which UMAA did not oppose. Then, on May 31, Defendants filed a petition for certiorari seeking Supreme Court review of the Fourth Circuit's decision in *IRAP v.*

*Trump*. In *IRAP*, the Fourth Circuit affirmed the District of Maryland's preliminary injunction of Section 2(c) of the President's Executive Order No. 13780, "Protecting The Nation From Foreign Terrorist Entry Into The United States," 82 Fed. Reg. 13209 (Mar. 6, 2017), against all Defendants except President Trump himself. The Fourth Circuit did not rule on any other portions of the Executive Order.

On June 2, Defendants filed what they styled an emergency motion seeking a stay of these proceedings. Defendants based their emergency motion on speculation that the Supreme Court might grant their petition for review in *IRAP*, *and* that the Supreme Court might reverse the Fourth Circuit's ruling, *and* that the Supreme Court's decision might come to that conclusion in a way that would render any proceedings in this case pointless. Defendants contend that allowing this case to proceed "would unnecessarily waste the Court's and the parties' resources, and would threaten to complicate future stages of the proceeding." Defendants' Motion ("Mot.") at 8.

Meanwhile, three days after Defendants filed their motion, President Trump made a series of statements via Twitter that reinforce why UMAA should be allowed to proceed to the merits. The President corrected statements previously made by White House staff that the Executive Order is *not* a travel ban,[1] explaining, "People, the lawyers and the courts can call it whatever they want, but I am calling it what we need and what it is, a TRAVEL BAN!"[2] and "That's right, we need a TRAVEL BAN for certain DANGEROUS COUNTRIES, not some

---

[1] *See, e.g.*, Adam Liptak and Peter Baker, *Trump Promotes Original 'Travel Ban,' Eroding His Legal Case*, NEW YORK TIMES, June 5, 2017, https://www.nytimes.com/2017/06/05/us/politics/trump-travel-ban.html (attached as Exhibit A to Declaration of David J. Weiner, attached to this Opposition as Exhibit 1).

[2] Donald J. Trump, Twitter (@RealDonaldTrump), https://twitter.com/realDonaldTrump/status/871674214356484096 (last accessed: June 7, 2017) (attached as Exhibit B to Declaration of David J. Weiner).

politically correct term that won't help us protect our people!"[3] The President further stated that the Department of Justice should "seek [a] much tougher version" of the travel ban,"[4] that "we are [conducting] EXTREME VETTING [of] people coming into the U.S.,"[5] and that the "Justice Dept. should have stayed with the original Travel Ban, not the watered down, politically correct version submitted to the S.C."[6] The White House Press Secretary has confirmed, moreover, that President Trump's tweets are "official statements by the president of the United States."[7] The government's shifting positions about what the Order is, what its purpose is, and how it is operating *even while preliminarily enjoined* reinforce the need to avoid delay.

## ARGUMENT

### I. Defendants' Petition for Certiorari Does Not Warrant a Stay.

This Court, of course, has broad discretion in deciding whether to stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936). But a party seeking a stay bears the burden to demonstrate that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order. *Id*. When the ground for such a motion is that a

[3] Donald J. Trump, Twitter (@RealDonaldTrump), https://twitter.com/realDonaldTrump/status/871899511525961728 (last accessed: June 7, 2017) (attached as Exhibit C to Declaration of David J. Weiner).

[4] Donald J. Trump, Twitter (@RealDonaldTrump), https://twitter.com/realDonaldTrump/status/871677472202477568 (last accessed: June 7, 2017) (Attached as Exhibit D to Declaration of David J. Weiner).

[5] Donald J. Trump, Twitter (@RealDonaldTrump), https://twitter.com/realDonaldTrump/status/871679061847879682 (last accessed: June 7, 2017) (attached as Exhibit E to Declaration of David J. Weiner).

[6] Donald J. Trump, Twitter (@RealDonaldTrump), https://twitter.com/realDonaldTrump/status/871675245043888128 (last accessed: June 7, 2017) (attached as Exhibit F to Declaration of David J. Weiner).

[7] Veronica Stracqualursi and Adam Kelsey, *Consider Trump's tweets to be 'official statements,' says Spicer*, ABC NEWS, June 6, 2017, http://abcnews.go.com/Politics/trumps-tweets-official-statements-spicer/story?id=47871334 (attached as Exhibit G to Declaration of David J. Weiner).

*different* case in a different court might, at some point in the future, somehow affect the issues currently in front of this Court, the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255. "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (citation omitted).

What is more, the existence of a proceeding in another case addressing similar issues cannot, by itself, determine the merits of a stay request, particularly when the parties have not agreed to a stay—as the parties did in most of the cases in this District that Defendants cited in support of their request. *See* Mot. 9. The Court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255. These considerations should include the traditional considerations associated with stays and injunctions, including likelihood of success and harm and prejudice to the parties. *See Via Christi Reg'l Med. Ctr., Inc. v. Sebelius*, Civ. A. No. 09-02060 (CKK), 2011 WL 13161451, at *1 (D.D.C. Oct. 28, 2011) (denying unopposed motion to stay proceedings because plaintiff had not demonstrated that the Supreme Court would grant certiorari or that substantial harm would result from continuing proceedings); *Sonnier v. Crain*, 649 F. Supp. 2d 484, 490 (E.D. La. 2009) ("The factors the court assesses when considering a motion to stay are substantially similar to those weighed when determining whether to grant a preliminary injunction, and the movant bears the burden of showing the balance of equities weighs heavily in favor of granting the stay."). For myriad reasons, it is unlikely that the Supreme Court will issue a ruling that would make ongoing efforts by the parties in this case unproductive.

**A. It Is Unlikely That Defendants Will Prevail Before the Supreme Court.**

First, it is not clear whether the Supreme Court will grant certiorari. And even if it does, it is far from clear that the Supreme Court will rule in the government's favor. This Court has already concluded that it is inclined "to agree with Plaintiffs that they are likely to succeed on the merits of their claims with respect to Section 2 and 6 of the Second Executive Order," UMAA ECF No. 48 at 2, and that determination is consistent with the view of nearly every federal court to consider any aspect of the Executive Orders—including of the en banc Fourth Circuit. *See, e.g.*, *IRAP v. Trump,* 2017 WL 2273306 (4th Cir. 2017), *aff'g* No. 17-cv-361, 2017 WL 1018235 (D. Md. Mar. 16, 2017); *Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017); *Hawai'i v. Trump,* No. 17-cv-0050, 2017 WL 1011673 (D. Haw. Mar. 15, 2017); *Aziz v. Trump*, No. 17-cv-116, 2017 WL 580855 (E.D. Va. Feb. 13, 2017). With the overwhelming weight of authority all pointing in the same direction, to suppose that the Supreme Court will grant review and reach precisely the opposite conclusion is speculative, to say the least.

**B. A Supreme Court Decision Will Not Resolve All Legal Issues In This Case.**

Nor, in all events, would even that sort of imagined decision by the Supreme Court be dispositive of the claims in *this* case. The petition for certiorari in *IRAP* outlines three issues on which the government seeks Supreme Court review: (1) whether the Fourth Circuit correctly held that a particular individual plaintiff had standing to bring an Establishment Clause claim, based on allegations that the Executive Order conveys an anti-Islamic message and affects his wife's ability to obtain a visa; (2) whether the Fourth Circuit correctly held that the *IRAP* plaintiffs had a likelihood of success on their Establishment Clause claim; and (3) whether the district court's injunction in *IRAP* was overbroad. Petition for Writ of Certiorari, *Trump v. IRAP*, June 1, 2017 ("*IRAP* Pet.") at I.

With respect to the first issue, even if the Supreme Court were to determine that the individual petitioner in *IRAP* lacked Establishment Clause standing based on separation from his wife or the message of disapproval that the government has conveyed to him based on his faith, that determination would not address whether UMAA, an organization, has standing to bring an Establishment Clause claim here. And indeed, the government concedes in its *IRAP* petition that a First Amendment challenge like the one that UMAA brings concerning exclusion of speakers whom UMAA wishes to bring to the United States suffices to confer standing. *IRAP* Pet. 14-15 (citing *Kleindienst v. Mandel*, 408 U.S. 753 (1972)). Hence, a grant of certiorari and a ruling in the government's favor on standing in *IRAP* would resolve that proceeding without disposing of standing in *this* case—except, perhaps, to say by way of comparison that claims of the sort that UMAA brings *are* justiciable.

With respect to the second issue on which the government seeks Supreme Court review, even if the Court concludes the *IRAP* petitioners have not shown a likelihood of success on the merits of their Establishment Clause claim, that ruling would not dispose of UMAA's case because: (i) IRAP is not bringing precisely the same Establishment Clause claim as UMAA is; (ii) the facts that go to IRAP's allegations of constitutional injury are not all the same as those that go to UMAA's; and (iii) a decision on the Establishment Clause would have no bearing whatever on UMAA's likelihood of success on its claims under the Free Speech Clause, the Equal Protection Clause, or the INA. Moreover, the district court preliminary injunction at issue in *IRAP*—the injunction for which Defendants are requesting Supreme Court review—only touches Section 2(c) of the Executive Order. In this case, Plaintiff challenges the entirety of Section 2 of the Executive Order, in addition to sections 4 and 5.

The third issue—the scope of the injunction—is pertinent only in that a determination by the Supreme Court that the nationwide preliminary injunction by the District of Maryland is

overbroad would make it all the more important for UMAA and its members to pursue injunctive relief expeditiously here; and a stay of these proceedings would frustrate that end.

Finally, and perhaps most critically, the government is seeking review of the Fourth Circuit's ruling on a preliminary injunction only. Hence, any decision by the Supreme Court would not and could not be a final decision on the merits even of the *IRAP* case, much less of *this* case. Presumptively, proceedings seeking a permanent injunction move forward even when a preliminary-injunction ruling is on appeal, at least if the parties have not agreed to stay the merits phase. *See* 16 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3921.2 (3d ed. 2017) ( "Interlocutory injunction appeals would come at high cost if the trial court were required to suspend proceedings pending disposition of the appeal. The delay and disruption alone would be costly."). "The desirability of prompt trial-court action in injunction cases justifies trial-court consideration that may be open in the court of appeals. A good illustration is provided by a motion to dismiss for failure to state a claim." *Free Speech v. FEC*, 720 F. 3d 788, 791-92 (10th Cir. 2013), *cert. denied*, 134 S. Ct. 2288 (2014).

The record here is different from and more robust than the record that either this Court or any court considering *IRAP* has had the opportunity to consider. Indeed, the body of evidence that UMAA will bring to bear here on its claim for a permanent injunction is *already* greater than in *IRAP* because of the President's tweets, which (a) resolved any remaining confusion over whether the second Executive Order is a "ban"; (b) confirmed that the second Executive Order is merely cosmetically, but not practically, different from the first one, and (c) surfaced new issues about whether the government is already engaging in "extreme vetting" that may violate the existing injunctions or create additional constitutional issues. None of that is in the *IRAP* record.

## II. Defendants Cannot Meet Their Burden To Demonstrate a Stay Is Necessary.

Defendants bear the heavy burden to show that the equities between the parties justify a stay that would completely derail Plaintiff's pursuit of a permanent injunction in this case: "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. And Defendants' motion does not identify *any* substantial harm that would result from this Court's denial of a stay.[8] Instead, Defendants merely contend that a stay would promote judicial economy (which they do not support with anything but self-serving statements), that this Court should await guidance from the Supreme Court of a character that is not likely to emerge given the nature of the respective proceedings, and that UMAA will not suffer any harm should this Court stay this case. Each of Defendants' arguments fails.

First, as to judicial economy, it is unlikely, for the reasons already explained, that a ruling from the Supreme Court against the *IRAP* petitioners would render this case moot. In all likelihood, this case will continue on the merits of some or all claims. And even when considerations of judicial economy and preservation of resources are present, a stay may still be denied. *See, e.g.*, *Holland v. ACL Transp. Servs,, LLC*, 815 F. Supp. 2d 46, 55 (D.D.C. 2011) ("courts in this Circuit have warned against mechanically applying" the rule favoring granting of

[8] Nor do Defendants present any reason for filing their motion on an emergency basis. The only "emergency" that the government confronts is a previously extended June 9 briefing deadline requested by the government itself. Defendants asked UMAA in this case and the plaintiffs in *Pars Equality Center* for a stay on May 18, or "in the alternative," a two-week extension—to June 9—of the deadline for responding to the complaints in both cases. *See* May 18, 2017 e-mail from B. Rosenberg to D. Weiner and J. Freedman (attached as Exhibit 2). UMAA agreed to the extension, not knowing that the government would pocket that agreement, avail itself of the extension, move for a stay anyway, and then treat that agreed-upon response date as an emergency, thereby necessitating a separate round of briefing by the parties. Whether or not Defendants had any intention of responding to the amended complaint by the extended deadline they requested, the "emergency" here is of the government's own making.

a stay to "avoid duplicative litigation.") (citations omitted). The other stays entered in cases involving the travel ban—including those in *IRAP* and in the *Hawai'i* appeal—are beside the point, because most were by stipulation of the parties or were unopposed.

Second, there is no need for this Court to await guidance from the Supreme Court. Quite the contrary: in considering the issues pending in the *IRAP* case, the Supreme Court would benefit from analysis from other courts, as UMAA noted in its supplemental memorandum in support of its motion for a preliminary injunction. *See* Pl.'s Supp. PI Mem. (ECF No. 42) at 5 ("[I]f the Supreme Court hears challenges to the March 6 Executive Order at the preliminary-injunction stage, the *PARS* and *UMAA* cases present important complements to the Hawaii and Maryland suits"); *id*. at 4 ("reasoned opinions by multiple courts will develop the law on, and aid any Supreme Court review of, the critically important questions here about invidious religious and national-origin discrimination and the scope of executive authority").

Third, UMAA and its members will suffer harm should this Court enter a stay. Despite the government's assurances that a stay would be "of a limited duration" because "[a]ll of these cases . . . have been moving extremely quickly" (Mot. at 11), the government's motion to stay the *IRAP* preliminary injunction, filed concurrently with its petition for certiorari, asks the Court to consider that petition on an expedited basis so that "merits briefing could be completed by the beginning of next Term." App. for Stay Pending Disposition of Petition for Writ of Certiorari, 16A1190, at 40. Presumptively, therefore, the very earliest that the Supreme Court would hear the case if a writ of certiorari were granted this Term would be in late 2017, assuming merits briefing is completed at the beginning of the new Term in October. Building in time for argument and a ruling, Defendants are asking this Court to stay the proceedings here for at least five or six months, and quite likely longer.

Such a prolonged stay would severely prejudice UMAA and its members, particularly in light of the President's recent statements that Defendants are conducting "extreme vetting" that may not comply with the injunctions currently in place. A stay would also affect UMAA's ability to pursue its claims regarding Section 4 of the travel ban, which is not currently enjoined, and which is being challenged only in this lawsuit. Finally, the delay that would result from a stay would harm the public interest, as "'[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. 2012), quoting *Abdah v. Bush*, No. Civ. A. 04-1254, 2005 WL 711814, at *6 (D.D.C. Mar. 29, 2005).

At bottom, Defendants' motion seeks to stay this case just to avoid having to respond to the amended complaint. But whether Defendants file an answer or a motion to dismiss, their filing plainly cannot constitute the pressing need that they must show in order to justify a stay.

Defendants have also asked the Supreme Court to stay the preliminary injunctions issued in both *IRAP* and *Hawai'i v. Trump* pending the Supreme Court's review of the Fourth Circuit's decision in *IRAP*. *See* Mot. Exhs. B and C. If these injunctions are stayed, the travel ban will immediately spring into effect. *See* Mot. Exh. B at 36 (explaining that Defendants request stays of both preliminary injunctions "to enable Sections 2 and 6 of [Executive Order 13,780] to go into effect without further delay[.]"). If Defendants' requests for these stays are granted, there will be no injunction left to protect UMAA, its members, and countless other individuals and organizations, all of whom will be harmed by the discriminatory effect of the travel ban. Defendants cannot contend that the existing injunctions in *IRAP* and *Hawai'i* will protect UMAA and its members from the harms of a stay here (*see* Mot. at 10-11), while simultaneously seeking to stay those very injunctions (*see* Mot. Exhs. B and C).

## CONCLUSION

Defendants' emergency motion for a stay of these proceedings should be denied.

Dated: June 7, 2017

Respectfully submitted,

/s/ David J. Weiner

David J. Weiner (D.C. Bar # 499806)
Charles A. Blanchard (D.C. Bar # 1022256)
Amanda J. Sherwood (D.C. Bar # 1021108)
ARNOLD & PORTER
KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
(202) 942-5999 (fax)
david.weiner@apks.com
charles.blanchard@apks.com
amanda.sherwood@apks.com

Emily Newhouse Dillingham
ARNOLD & PORTER
KAYE SCHOLER LLP
70 West Madison Street
Chicago, IL 60602
(312) 583-2300
(312) 583-2360 (fax)
emily.dillingham@apks.com

Andrew D. Bergman
ARNOLD & PORTER
KAYE SCHOLER LLP
700 Louisiana Street, Suite 1600
Houston, TX 77002
(713) 576-2400
(713) 576-2499 (fax)
andrew.bergman@apks.com

Johnathan Smith
Sirine Shebaya (*application for admission pending*)
Aziz Huq
MUSLIM ADVOCATES
P.O. Box 71080
Oakland, CA 94612
(415) 692-1484
johnathan@muslimadvocates.org
sirine@muslimadvocates.org
aziz.huq@gmail.com

Richard B. Katskee (D.C. Bar # 474250)
Bradley Girard (D.C. Bar # 1033743)
AMERICANS UNITED FOR
SEPARATION OF CHURCH AND
STATE
1310 L Street, NW, Suite 200
Washington, DC 20005
(202) 466-3234
(202) 466-3353 (fax)
katskee@au.org
girard@au.org

Gillian B. Gillers
Kristi L. Graunke
Naomi R Tsu
SOUTHERN POVERTY LAW
CENTER
1989 College Ave., NE
Atlanta, GA 30317
(404) 521-6700
(404) 221-5857 (fax)
gillian.gillers@splcenter.org
kristi.graunke@splcenter.org
naomi.tsu@splcenter.or